The next case is the case of the U.S. v. Davis. Ms. DeLauro. Thank you, Your Honor. Nice to see you. It's good to see you, Your Honor. Thank you. May it please the Court. This Court is not accustomed to hearing cases like this one, and that is for good reason. Here, all of the activities... Like which one? I mean, what do you think? You're getting ready to tell us what makes this distinct? I am, Your Honor. What this one refers to? The fact that... Every lawyer feels that way. I believe in this case it is true, because all of the activity in this case occurred within the state of North Carolina. Now, since when has that mattered? Since the truck and the mudflap? Really? The facilities of interstate commerce must be engaged in order to... Cell phones? Cell phones and automobiles do count. Cars? That's correct, Your Honor. But in this case, it was the government, not Ms. Davis, that established the platforms. No, no. Ms. Davis used the cell... initiated calls. Oops. Your Honor, in this case, it was the government that established those platforms for... She engaged in her own... This is not like the ruse where the officers go out of the state to make a call to establish jurisdiction, which is really the only exception I can think of to the general rule. Your Honor... Interpreting... well, certainly cars. She did drive her own car. She drove her own car. She used her own cell phone. She communicated with the informant. That is true, but in this case... So the government didn't initiate that. The government... She found somebody to kill her... I mean, she... I know, I'm not letting you finish the sentence. I'm sorry. That's all right. Finish the sentence. She used a car and a cell phone in an effort to find somebody to kill her ex-spouse. May I begin a new sentence, Your Honor? I didn't think you wanted to finish that one. Did you ever get to introduce yourself? I'm sorry. My name is Jackie DeLauro. I represent Ms. Davis. Had you done that? I'm sorry. That's all right. I just wanted to say that at the time the government sent the first controlled text message, they had no evidence that Ms. Davis had used or intended to use the Facilities of Interstate Commerce. What difference does that make? What difference does that make? This Court thinks it makes quite a lot of difference. In Coates, it said that despite investigation... This Court... The Fourth Circuit, in a published opinion, United States v. Coates, said that at the time when the officers engaged the Facilities of Interstate Commerce... Didn't the government admit in that case that the only reason that they used the communication device was to create jurisdiction? That's true, Your Honor. In this case, the government never... Didn't the judge who wrote the opinion go on to say, we were very narrowly focused on the fact of their confession? In those limited circumstances that such manufactured interstate connection cannot satisfy the interstate nexus element of the offense. But to emphasize the narrowness of our holding, we explained that the decision rested entirely on the fact that the only reason the soldiers... I mean, that's a lot of limiting phrases. Jurisdictional link occurred here was that it was contrived by the government for that reason alone. And in this case, the government presented no evidence of a legitimate... They didn't have to. They did, Your Honor. No, the Court... We also say we don't presume the government to have followed that path. Isn't that correct? That's our case law, too. There's not an admission. And we also have said we do not presume that the Court did it to create jurisdiction. Isn't that correct? It is correct. It is case law of this Court, but there is no presumption that's required when we know from Mr. Nguyen's testimony at JA 339 that he and Ms. Davis did not have a texting relationship. They did not text back and forth. I don't understand why you think that matters. The government in its brief has pointed to the fact that cell phones are ubiquitous and that it was, quote, an easy and obvious way to keep in touch with Ms. Davis. And while that may be true out in the world, we know that was not true of the relationship between Ms. Davis and Mr. Nguyen. I still am not clear why you think it matters. It matters because this Court in Al-Talib in 1995 said the government may not manipulate events to create federal jurisdiction over a case. And in this case, they did just that. So what was in order to proceed with this investigation? I take it, under your theory, the only way that the government could have proceeded would have been if the informant or the agent walked to this lady's house. Or used carrier pigeons. Not so, Your Honor. The government could have continued to investigate the case. They did not need to affirmatively go out and send a controlled text message to Ms. Davis. Well, of course they had to send, they had to communicate with her. And how did Ms. Davis communicate with Mr. Nguyen? Is that how you pronounce it? I believe so, Your Honor. How did she communicate with him? At JA-339, he explained they did not text back and forth. That she had come into their nail salon previously, that he knew her from those interactions. Did she drive to the salon? We don't know, Your Honor. That testimony is not in the evidence. She used a lot of interstate facilities, correct? Facilities of interstate commerce. She used cell phones, correct? Yes. She used a car, correct? Yes. That would give jurisdiction, correct? No, Your Honor. Why would it not give jurisdiction? In fact, she used a burn phone, didn't she? She used a track phone, but this court has never relied on the nature of the cell phone. And we don't contest that a cell phone is not a facility of interstate commerce. So what is your argument? That the government contrived that as a mechanism to establish jurisdiction? Yes, that it manufactured jurisdiction. This court in Brantley said- Your argument is fruit of the poisonous text, isn't it? No, Your Honor. It's not. That is exactly what it is. Yes, it is. You stop and think about it. You say the initial text was improper, correct? Yes. Then there were text messages and use of automobiles after that, correct?  And those could independently grant jurisdiction to the court. If they came from Ms. Davis. You may not believe that, but trust me, that's the law. They could. If they came from Ms. Davis. Why? The meet-ups were set by officers. They came from what? If the use of those facilities was initiated by Ms. Davis. Why? Because- I'm sorry. So she needed to call the hit man as opposed to vice versa? In the first instance, yes. What about using a car? The car was only driven in response to the government's establishment of the meet-up locations, which were parking lots and a gas station. Did they tell her to use a car? They didn't, but they set the meet-ups. But what difference does it make? If someone calls you to meet them, isn't it reasonably inferable? How many ways are you going to get there if it's not within walking distance? Your argument seems to proceed on the assumption that cell phones and automobiles aren't the ordinary avenues of interchange. So that because there has been some communication that the government called, or she called, that the government can never- that it's off the table from then on that telephones or cars be used. And I'm just unaware of any authority for that proposition, because Coates certainly is not. Coates says that the government may not manufacture- Coates certainly is not. We have read- I mean, I've read to you verbatim the language that says, just, only, mere, sole, and every other exclusionary adjective I can think of to cabin its holding, that the government chose a jurisdictional- to cross a state line for the sole purpose of creating jurisdiction. There's just no suggestion of that here. Your Honor, other courts have accepted that view, which is that later voluntary affirmative acts of the defendant can wash clean the manufacture of jurisdiction. This court has not done so, and in fact- Wait a second. You say the law- in your brief, you say the law is, the government cannot undertake something solely for the purpose of manufacturing jurisdiction. Where's any evidence that- isn't that what the law is? That's- Solely. That is Coates, Your Honor. That is the law in this circuit? Yes. Where's the evidence that the use of the cell phone here was solely for the purpose of jurisdiction? Because the government sent a controlled text message in a situation where that was not established. That doesn't mean it was solely for that purpose. Judge Duncan's already pointed out, which I think we don't need to take judicial notice of, but everybody texts and talks on cell phones now. But these two individuals did not. And it was not until the government encouraged- She got word to him that she wanted to kill somebody. That interaction- it was disputed at trial who initiated that conversation, but it is undisputed that it took place in person. And it was not until the government got involved that a controlled text message was sent. I still say, where's the evidence that the initial use of the text by the government informant or agent was done solely, as you say the law is, solely for the purpose of manufacturing jurisdiction? I would point to JA 339 where Mr. Nguyen explains that he and Ms. Davis did not text until he was involved with officers. But that doesn't mean it's solely for that purpose. It does not mean it's solely for that purpose, not when it's a common way that people contact each other. What about convenience? Is it a convenient way to establish contact? It is a convenient way to establish contact. Is it the most, arguably the most convenient way to establish contact? Even if it is, Your Honor, that does not excuse- But you have to answer my question. Yes, it is. Because I posed it. It may well be the easiest way. No, well- Okay, so let's assume it may well be. Then manipulation is the- you have a- there's no support for the notion that manipulation is the sole justification. But if it's an extremely convenient, available means, then there's simply no logic or law to support the notion that the government has to choose another mechanism to avoid an argument of jurisdictional manipulation. There was another option, Your Honor. They could have continued to investigate Ms. Davis. It doesn't make any difference. That's not the standard. The standard is that in Brantley, this court said that- The standard is the use of the instrumentality has to be solely, solely for the purpose of jurisdiction. Judge Duncan's gone through a litany of why it's not solely- By the way, there's no evidence in this case. The evidence that we have, the cases that we have, the government admits it. They go, Your Honor, we admit it. I suspect the government wised up and started keeping their mouth closed on some of those cases. But they would say, we admit it. There's one other case in which it's clear that the government took the gambling operation across state lines. And as I read that case, there were no other bases for jurisdiction other than that moved by the government. Well, there was an attempt by the government to suggest that the defendant's willingness to engage in that activity was enough. And the court said once jurisdiction has been manufactured, the conviction may not be sustained on any subjective intention of the defendant. We have yet to establish that it was impermissibly manufactured to start with. I don't believe so, Your Honor. Well, in the light of the fact that it was only the officers that set the location in car places, parking lots and gas stations. But that's going to happen just about anywhere else. Restaurant, movie theater, shopping center, where do you not go by car? I'm not saying that those are places that may or may not require a car. Then I don't know what you are saying. Where could they have chosen if you cabin this, and we haven't gotten to cars yet. We're still talking about cell phones. You still haven't talked about cars. So because she got into the police, the hired pseudo hit people's car, correct? And you're saying that doesn't count either because? Because they established the meetup location in a parking lot. What possible difference could it make analytically? In the sense that it is a unique crime that has these elements that gets into federal court. The Travel Act was designed to reach mafia dons and racketeering cases. And this is the most domestic of domestic cases. Your argument almost sounds like the odd jurisdictional argument you made in your brief, which you haven't mentioned today. The manufactured jurisdiction, Your Honor? Didn't you argue? We argued that this implicates the court's subject matter jurisdiction. Yes, tell me about that. Because that's how the court analyzed the question in Coates. But I think even under the government's theory of sufficiency of the evidence, the remedy is the same. Which is the conviction would need to be reversed. Let me ask you this. Are you arguing in this case that even if we didn't have the initial text from the police, that there still is no instrumentality of interstate commerce? In other words, there wasn't further cell phone use. There wasn't automobile use. Do you argue that that all gets wiped out? That's what I thought you were making a fruit of the poisonous text. But you apparently are saying, forget that. Anything else, independently, they all get washed out too? Is that what you're saying? Because that initial... Is that what you're saying? Yes, Your Honor. So in other words, the fact that she used a car, every time she used a car, each one of those independently gets wiped out as a basis for jurisdiction? Because the government established that platform. I don't know what that means. What do you mean the government established that platform? What authority do you have for it? Because the government was manipulating jurisdiction, and I'm relying on Al Tlaib and on Coates. But how did they manipulate it? They said, meet us? Yes, at a parking lot. Meet us at a gas station. Meet us at church. That's not necessarily a car place. But how do we draw that line for the next... What's the line you would have us draw in this case? They can't suggest a place where it's logically inferable that people might come to in cars? And where is that? That when the government sets... What were they saying? Answer. How would you draw that line between a church... The rule would be that if the government initiates the use of facilities of interstate commerce, it must at the very least offer some non-pretensive purpose. Is there any situation that you would say where the government initiates the contact, they're the first caller, that there would still be jurisdiction? Or are they all, as a per se rule, always fatal? If the government offered a non-pretensive purpose... In other words, we want to meet with you, but listen, the only way the killer will meet with you is if you walk there? No, Your Honor. If the government had come into point... By the way, you would lose your argument then because the government then hadn't offered a platform. They've offered an alternative. We want to meet with you. We'll be glad to kill your ex-husband, but don't you drive a car. You walk down here to meet us. Our argument is not the government has to tell you... No, wait, wait, wait, wait, wait. But that, in your argument, that would not be manufactured jurisdiction. If they offered at trial a non-pretensive... No, no, no, no, no, no. I gave you the scenario. Walk to meet us. The killer's dying to meet you, but walk down the street. And then she drove her car? That would be appropriate. That would be engagement of the use of facilities... But you haven't answered my question. I asked you to draw a line for me here of what you think would be permissible place to choose to meet where you wouldn't reasonably think that someone would drive a car to. At a home, at the nail salon, at other places where... Name two. So the nail salon, why would you not think that somebody would drive a car to a nail salon? They may drive a car to a nail salon. Why wouldn't you think that somebody would drive a car home? They might, Your Honor, but it doesn't... The setting of the location does not require that type of transportation. The setting of a location as a parking lot doesn't require it. It's the chosen mode. So you still haven't given me a workable rule that can apply in any other case other than don't do it in a parking lot. Your Honor, the government would need to choose a place or allow Ms. Davis to choose a place. But this isn't the government's rule. This is the rule you want us to establish. And I'm asking for a rule that guides so that people, the government, will know in the next case. What's the list of places I can have somebody meet me that doesn't involve taking a car to? Parking lots are out. Parking lots are out. Gas stations are out. But other places, the nail salon... No, what's the rule? The rule is that when the government manipulates the choice of location in such a way... What's the rule? You're not answering my question. And I think it's because you're already seeing that it's unworkable. I don't believe so, Your Honor. But you didn't give it to me. What's the rule? Any location that does not... What's the rule? Your Honor, the rule is when the government sets a location that begs an individual to use the facilities of interstate commerce... Begs an individual to use a facility in interstate commerce. Yes, because mere responses in kind are not enough. If I may have a moment to briefly address the sentencing question... You may do that, and we'll take it off the end. You have three minutes reserved. Do you want to talk about it now? If I could have just two minutes now to talk about it, I'd like to. You sure can, but we'll leave you one minute. Okay. Your Honor, I wanted to address the sentencing argument because even if this court does not reverse Ms. Davis' conviction, we still believe that her 120-month statutory maximum sentence was substantively unreasonable. It's not, though. We believe it is, Your Honor. Because the maximum under the law saved you seven and a half years. That's not correct, and that's exactly the error that the sentencing judge made. It most certainly is correct. No, Your Honor. It's Congress that sets the statutory maximum penalty, and the advisory guidelines are designed to implement that. Just let me suggest to you, I was a congressional staffer who worked on the sentencing guidelines in 1986. I do. And I sentenced people under them for 12 years, and now I've been reviewing sentences. What are you talking about? There's a suggested guideline range that begins at 210 months for your client, correct? That's the advisory guideline range. Correct. Before the substitution. And then when there is a statutory maximum, that becomes the guideline, doesn't it? Correct. That's 5G 1.1. That's what happened here. And that guideline, the statutory maximum, saved your client on the bottom of his guideline range 90 months. That's seven and a half years. No, Your Honor. The correct guideline range now is 120 months for the exact reason that Your Honor just stated. I know that, but the existence of the statutory maximum saved him 90 months on what would have been the guideline range. It did not. Because the guideline range is calculated at 120 months, and then the court is tasked with using the 3550 factors. No, stop. Stop. If he didn't have a statutory maximum in this case, what would your client's guideline range be? 210 to 262 months. That's my point. That's my point. So the existence of the statutory maximum under the guidelines saved him the lowest number 90 months. No, Your Honor. 5G 1.1 sets the new advisory guideline range, and the court is tasked with using the 3550 factors from that new advisory guideline range. That old guideline range is just a ghost. What would you suggest? Acceptance of responsibility? She went to trial, so we understand that she lost acceptance of responsibility. And there were some pretty damning comments by this judge. That's true. That might suggest that you wouldn't feel particularly comfortable throwing her at the mercy of the court. The judge, I think he used the term cold-blooded. He did, but he did not articulate that he would have imposed the same sentence if he had committed an error. Oh, I think that's a pretty clear hint. I think it pretty much is. Your Honor, he did not, we believe, give adequate attention to his case. How do you think your client is in any different position than anybody else who is sentenced under an advisory guideline? How is your client any different? They have a bottom number. In your case, it would have been 210. But because of the statutory maximum, which trumps and becomes a guideline, it's now set at 120, correct? That's correct. But a judge can go below 120, right? Of course he can. And a judge can go below 210. Correct. So how is your client any different than anybody else who is being sentenced? Because the judge is tasked with explaining under the 3553A factors the extent of a downward variance. And here we believe the judge was operating from that 210 number and not from the 120 number, believing that he had to justify a variance with a greater amount of reasoning. Wouldn't that argument go to why there should be a variance below the 120 marks? Yes, Your Honor, and Ms. Davis asked for that at sentencing. But you think this judge didn't understand that her guideline range was 120? He calculated the guideline range. We haven't challenged the procedural reasonableness. So my point is, what you just said, you thought he thought you just said, your argument is the judge felt like he had to depart from the 210 downward. Correct. What makes you say that? We believe that he was considering an improper factor, which this court has described in cases like United States v. Moreland as substantive unreasonableness. That when a judge is considering a factor that is not listed in 3553A, what is the factor? This ghost guideline that's exerting a magnetic pull on the sentence upward. What? The Supreme Court in Pew has talked about how the guideline, the advisory guideline range can have a magnetic effect on a sentence. You think the judge here was influenced by a magnetic guideline pull. He understood what the number was 120. Isn't that what he said in the sentencing? He said that was the new advisory guideline range. But at the end of his sentencing hearing. You could have convinced him, perhaps, but you certainly could have argued just like everybody else that has a guideline number, that you want him to go below that number. Her counsel at sentencing did argue that. But the judge said your tenure sentence, which is the statutory maximum, is really just half the guideline range. Had there been a greater statutory maximum penalty applicable to the offense. He's making exactly the point that I made to you. And you want to talk about semantics, but quite frankly, I think you're wrong. I think anybody looking at that, her guideline range is calculated. And it's calculated at 210 to 240. Something like that. That would be her number that the judge would then, we would presume that to be reasonable, and the judge would sentence likely in the 210 to 240 months. And he could only sentence otherwise if he departed or if he gave a variance. He's just saying, you're lucky. You should have been at 210, but you're really at 120, just what I said. It's a benefit to your client to have that statutory max. And that helps her because that 120 substitutes is her guideline range. But, Your Honor, in this case, the 120 statutory maximum set by Congress doesn't take any account, as it normally would, of the characteristics of the offense and the characteristics of the offender. Because she had the lowest criminal history category that one can have in Congress. So we won't tell Congress you don't like what they did. No, Your Honor, I think the advisory guidelines fail in operation of this guideline for the statute to implement Congress's directive. And Congress said that where no harm comes to the victim, the max should be 120 months. Thank you. I think you've probably gone over your time, but I'm still going to give you a minute or so at the very end. Thank you very much. Okay, Mr. Enright, when you're ready. Thank you, Your Honor. May it please the Court? Anthony Enright for the United States. Let's get right to it, Mr. Enright. What have you got to say? Certainly, Your Honor. As Judge Duncan alluded to, Coates imposed three limitations on the manufactured jurisdiction defense. First, the evidence supporting the jurisdictional element has to be contrived by the government. Something counterintuitive, like going across state lines. What's the biggest reason she fails in her argument? The biggest reason, Your Honor, Fathiana Davis drove her own car to meet with these undercover officers three times and away from them three times. She used her own cell phone, three cell phones. She bought her own track phone, specifically for the purpose of this murder-for-hire plot. Did you understand my assertion that the other side was really arguing the fruit of the poisonous text? Yes, Your Honor. Did you understand that? Yes, Your Honor. It seemed to me, I thought the argument was, once the government tainted the jurisdiction with that initial call, I'm not saying that you did, but our argument seemed to be that everything that followed, even if she independently used her phone and drove, that that was tainted. Now, she didn't accept that. She said each one is tainted independently. Do you understand that argument? I believe I understand the argument. I believe that if she made it, it wouldn't be correct. Codes impose a real specific limitation. The jurisdictional element, the contrivance by the United States, has to be the only evidence that supports the jurisdictional element for that defense to apply. That wasn't the case here because of the reasons I mentioned. The Second Circuit, which originated... I assume you would say that there is no evidence of contrivance here. There is absolutely no evidence of contrivance. What the district court, what Codes said was when some kind of contrivance is apparent, then the court needs to engage forcefully. So there's no evidence of contrivance, does that, in the case as far as you're concerned? It does, Your Honor. There's three independent elements of the manufactured jurisdiction defense. If any one of them is not met, Codes doesn't apply, Brantley doesn't apply, Archer doesn't apply, and those are really the only three decisions. Are you sure that that's what you think the rule is? Evidence of contrivance? Or does it have to be that evidence of contrivance has to lead to the resolution that was done solely for that purpose? Oh, I believe all three, Your Honor. Three elements. One is it has to be a contrivance. Second, the contrivance has to be created for the sole purpose of manufacturing jurisdiction. And the third is the contrived evidence has to be the only evidence to establish that jurisdictional book. Why did the judge make an error in sentencing this defendant? I don't believe the judge did make an error, Your Honor. A 10-year sentence is substantively reasonable for trying to kill your ex-husband not for the first time, perhaps not even for the second or third time. What is this plain error review? To the extent, Your Honor, that the defendant is arguing that there's something wrong with the guideline regime, it's certainly a plain error. Just let me say this. Is it true under the facts in this case there was no objection made, there was no objection made at sentencing? Absolutely right. Why isn't it plain error review? I believe that it is plain error review to the extent she's arguing that there's something wrong with the guidelines. But to the extent she's arguing that the sentence should be lower, she did preserve that by asking for a time-served sentence. But I think that is incorrect. It was an entirely reasonable sentence because, as the district court properly found, it was a cold-hearted attempt to murder her ex-husband. She lied under oath. So is it plain error review or is it not plain error review? Your Honor, the question of whether the... I know what the question is. Is this plain error review or not? When we're reviewing the sentence, the 10-year sentence that her client received. The substantive reasonableness of the sentence is not plain error review. By asking for a lower sentence, she preserved the right to say that sentence... So it's not plain error review. To the extent, I believe she's making a new argument that I don't know that was made before. She said that the district court relied on an improper factor, a ghost guideline, said that Congress did not implement or that the Sentencing Commission did not implement Congress' intent. Those were not raised below in any way, shape, or form. To the extent the court reviews those questions, it should be for plain error and because there's no effect on her substantial rights. What's your answer on why the judge should be affirmed? That's what you're arguing, aren't you? On the sentence. Well, Your Honor, the court... On everything, I take it, but certainly on the sentence. Certainly, Your Honor. The sentence, I'll start there. Ms. Davis told her... engaged this cold-hearted effort to have her ex-husband killed. The district court reviewed her testimony and saw the video and audio of her committing these acts, found it to be cold-hearted. It's a very serious offense. It wasn't the first time she tried to kill him, was it? It wasn't the first time she tried to kill him. There's both direct testimony... She loaded him up with Ambien, right? In the hope that he would die behind the wheel of a car. He'd have a car crash and it would kill him. That was her hope. That plan went away. Does that establish interstate jurisdiction, that she tried to kill him by overdosing him in Ambien before he got in the car? It probably would, Your Honor. I don't think that was necessarily the use of the facility that was charged in this case, but perhaps it would. But her first plan fell apart because she gave him too much and he fell asleep before he could start the car. That's correct, Your Honor, and that may not have been her first plan. She told the police officer she's been trying to do this for two years. I did have one. Is there anything in the record, and just tell me if there isn't, I looked for it, about the migration of this case from the Western District to the Eastern District? And don't tell me if it's not in the record. It starts out in the Western District of North Carolina, doesn't it? It starts out and ends there, as far as I know, Your Honor. Really? All the conduct was in the Charlotte area. Our office is in the Western District of North Carolina. We prosecuted it in the Western District. Okay. Okay, thank you. I don't mean to quibble. No, no, it was just an informational question. Certainly, Your Honor. Yeah. I'm looking at the brief. Uh-oh. I'm always in trouble when the brief's contradicting what I meant. Well, maybe it's just... I think you could say, Your Honor, I've never seen that brief before. Am I misreading that? They're all in the Eastern District of North Carolina. So it was Judge Conrad, right? It was Judge Conrad of the Western District. Of North Carolina, right? I know you. You're from the Eastern District of North Carolina. And it's not, it's of no consequence whatsoever. Yes, it is. What are y'all doing here? We were appointed to represent the diggers on a field. The case remains in the Western District. I see. Yeah. Don't you dare try to sneak anything past Judge Conrad. I'm not trying to take anything. Just get mildly... I didn't think you two were in the same... This is our first occasion meeting each other in person. Allow me to introduce... You think further. Thank you. Thank you very much. We've read your argument. I appreciate it, Your Honor. I'll close by saying I ask the Court to affirm the judgment of the District Court. Thank you very much. Mr. Lauro, you want a chance and take another minute or so? Just a very brief one, Your Honor. I just want to note that I've never seen a case where the manufactured jurisdiction theory has been raised as an affirmative defense. It is, in fact, about the sufficiency of the government's proof. And here the government never established any non-pretensive means for reaching out to Ms. Davis in the way that it did. So we believe that the failure of the government's proof is something that makes their evidence insufficient and that they did not meet their burden beyond a reasonable doubt. I would just hang around for a minute. We would just ask that the conviction be reversed and even if not, that she be remanded for resentencing by Judge Conrad. Thank you. All right. Thank you very much. We are going to step down.
judges: Dennis W. Shedd, Allyson K. Duncan, G. Steven Agee